

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 26, 2023

**BY ECF**
The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Vadim Wolfson</u>, S2 24 Cr. 91 (GHW)

Dear Judge Woods:

      The Government respectfully submits this letter in opposition to defendant Vadim Wolfson's motions (Dkt. 41 ("Def. Mem.")) seeking court-ordered modifications to the Government's filter review protocol to (1) limit Wolfson's disclosure of individuals with whom he alleges he has had privileged communications to the Government's Filter Team, and not the Case Team; (2) permit Wolfson to review all documents slated for release by the Government's Filter Team as non-privileged before they are released to the Case Team; and (3) for injunctive relief prohibiting the Filter Team from releasing any additional non-privileged materials to the Case Team and barring the Case Team from reviewing any documents already obtained from the Filter Team pending resolution of these motions. The defendant's requests should be denied. They are unsupported by law, mischaracterize facts regarding the Government's filter review process, and are inconsistent with common sense.

## RELEVANT BACKGROUND

**I.    The Indictment and Wolfson's Electronic Devices and Accounts**

      The defendant is charged in connection with his dealings with and purchase of a property located in Aspen, Colorado that was, until in or about September 2019, owned by Andrey Kostin, a Russian oligarch who was sanctioned and designated a Specially Designated National by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") in April 2018. In connection with that property purchase, Wolfson caused approximately $12 million in U.S. dollar payments to be made for the benefit of Kostin, without an OFAC license. Wolfson is charged in Indictment S2 24 Cr. 91 (GHW) with: (1) conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C. § 1705, Executive Order 13661, and 31 C.FR. § 589.201, and (2) two counts of violating IEEPA, in violation of 50 U.S.C. § 1703, Executive Order 13661, and 31 C.FR. § 589.201.

      Wolfson was arrested on February 22, 2024. On that same date, pursuant to a judicially authorized search warrant, the Federal Bureau of Investigation ("FBI") seized a cellphone, an iPad,

a laptop, and three USB storage devices (collectively, the "Devices") from the defendant's residence. The FBI has completed extracting the data from the iPad and is completing processing of the data from the three USB storage devices. The Government anticipates producing the data from those devices to the defendant shortly. The FBI experienced some technical issues in attempting to extract the data from the cellphone and has not yet extracted the data from the cellphone or from the laptop. The Government will produce the data from those devices as soon as it becomes available.

Over the course of its investigation, the Government also obtained materials, pursuant to judicially authorized search warrants, from certain electronic accounts utilized by the defendant. For example, on January 10, 2024, the Government obtained materials from iCloud accounts associated with the email addresses vadimwolfson@gmail.com and vb5717@gmail.com, which are believed to be used by the defendant. On or about April 5, 2024, the Government produced to the defendant the data received for those two iCloud accounts. The Filter Team completed its review of those iCloud materials on or about April 9, 2024, and the Government anticipates producing the subset of materials released by the Filter Team to the Case Team once it receives a requested hard drive from Wolfson. The Case Team has not yet begun its review of these materials, in part because of the discussions the parties were having regarding the filter review process and the defendant's instant motion. The Case Team intends to begin its review on May 6, 2024, absent a court order barring it from doing so. For the reasons discussed below, however, the Government does not believe that injunctive relief barring it from beginning such review is warranted.

In addition, in or about November 2022, the Government obtained content for email account vadimwolfson@gmail.com, which is believed to be used by the defendant. Filter review of that email account was completed more than a year ago, and the Case Team has reviewed the materials that were released to it by the Filter Team. The Government anticipates that the non-privileged materials from that email account that were released to the Case Team will be included in a discovery production that is scheduled for next week.[1]

## II. The Filter Review Process

Based on the Government's investigation and communications with defense counsel, the Government understands that the above-described Devices, iClouds, and email account likely contain communications between the defendant and counsel that could implicate the attorney-client privilege or work-product doctrine. Accordingly, to ensure that the Case Team, consisting of law enforcement personnel involved in this investigation, including attorneys for the Government responsible for prosecuting this case, collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege, the Government has and is employing a team of lawyers and law enforcement personnel that is separate and apart from the

---

[1] The Government is also in the possession of other materials, obtained pursuant to other judicially authorized search warrants, for devices and accounts used by other individuals, including co-defendant Gannon Bond. The Government has and is utilizing the same filter review process for those devices and accounts used by Bond.

2

Case Team (*i.e.* the Filter Team) to identify potentially privileged materials and withhold those materials from the Case Team.

The Government's Filter Team utilizes and is led by dedicated AUSAs who work only on filter teams and are not members of any of the Office's criminal units. Those dedicated AUSAs may be assisted by contract attorneys, paralegals, or agents. Filter Team members are not involved in the underlying investigation or prosecution, and they do not share the content of any potentially privileged materials with the Case Team.

In this district, filter teams are routinely used to review materials obtained pursuant to search warrants in both covert and overt investigations, and their use has been repeatedly upheld. *See*, *e.g.*, *In re Search Warrants Executed on April 28, 2021*, 21 Misc. 425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 20, 2021) ("[t]he use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications") (collecting cases); *United States v. Avenatti*, 559 F. Supp. 3d 274, 282 (S.D.N.Y. 2021); *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *8 (S.D.N.Y. Oct. 9, 2020); *United States v. Ceglia*, No. 12 Cr. 876 (VSB), 2015 WL 1499194, at *1 (S.D.N.Y. Mar. 30, 2015).

To implement its mandate, the Filter Team typically applies a series of search terms, based on a list of attorneys provided by the Case Team (to the extent the Case Team is aware of the involvement of any particular attorneys) and any attorneys or law firms identified by the Filter Team from the contents of the materials being reviewed. The search terms, coupled with targeted manual review, are intended to identify materials that involve attorneys and law firms (the "potentially privileged" materials). The Filter Team then segregates the potentially privileged materials and provides the remaining non-privileged materials to the Case Team for responsiveness review. The Filter Team may also provide the Case Team with certain information about materials withheld from the Case Team, such as a list of attorneys involved in potentially privileged communications or non-content information such as email headers or document properties.

To facilitate the efficacy of the Filter Team's review, in an overt investigation, the Government often invites defense counsel to supply the Government with a list of attorneys with whom the defendant claims to have engaged in privileged communications. Consistent with that practice, on March 19, 2024, following the initial pretrial conference in this matter, the Case Team invited defense counsel to provide the names and email addresses of attorneys with whom the defendant claims to have engaged in privileged communications. Despite repeated follow-up requests, Wolfson has declined to do so.

Once non-privileged materials are released by the Filter Team to the Case Team, the Case Team may begin its responsive review of the materials.

In order to maintain its integrity and focus on protecting the attorney-client privilege, the Filter Team will not negotiate or litigate matters unless doing so requires disclosure relating to the substance of potentially privileged material (*i.e.*, content information beyond the type that would typically be included in a privilege log). Litigation regarding whether an attorney-client

relationship exists generally does not require disclosure of any potentially privileged material and is thus the responsibility of the Case Team.

In an attempt to address defense questions regarding the filter review protocol, the Government explained the above filter review process, in sum and substance, during a call held on April 4, 2024. During that call, defense counsel expressed concern that the Devices might contain privileged materials that might not be identified by searches for attorney names or law firms. When asked for any examples of what such materials were believed to be contained on the Devices, however, defense counsel could identify none. To further assuage concerns regarding such materials, the Government also offered to put defense counsel in touch with a member of the Filter Team in this matter so that they could directly communicate to describe the nature of, or location of, any such difficult-to-identify potentially privileged materials. The defense has not sought to take the Government up on this offer.

The Government further informed the defense on April 4 that it intended to have the subset of materials withheld from the Devices as potentially privileged produced to Wolfson so that he can determine if he is, in fact, asserting any applicable privilege. Should the defense assert privilege, the defense would be obligated to provide a privilege log setting forth information sufficient for the Case Team to evaluate each privilege claim. As with attorney lists, privilege logs can and should be provided to the Case Team because they do not contain potentially privileged content.[2]

On April 10, 2024, the Government informed the defense via email that if it did not receive an attorney list from the defendant by April 17, 2024, it intended to have the Filter Team begin the filter review process using the Government's standard protocols. Wolfson filed the instant motions seeking modification of the Government's filter review protocols on April 16, 2024.

The Filter Team began conducting its filter review process of the data extracted from Wolfson's iPad and three USB storage devices on or about April 18, 2023. The Filter Team has not yet released any non-privileged materials from those devices to the Case Team. The filter review process has not yet begun for the cellphone or laptop because, as noted above, the Government has not yet been able to complete its extraction of data from those devices. The Government cannot begin its responsive review of the Devices until the Filter Team has released materials that are not potentially privileged to the Case Team.

## DISCUSSION

The defendant asks the Court to (1) limit Wolfson's disclosure of individuals with whom he alleges he has had privileged communications to the Government's Filter Team, and not the Case Team; (2) permit Wolfson to review documents slated for release by the Government's Filter Team as non-privileged before they are released to the Case Team; and (3) grant injunctive relief prohibiting the Filter Team from releasing any additional non-privileged materials, and barring the

---

[2] It is well-settled in this Circuit that the party claiming the protection of a privilege has the burden "to establish those facts that are the essential elements of the privileged relationship." *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)).

Case Team on reviewing any materials it has received from the Filter Team, until the resolution of these motions. For the following reasons, the defendant's motions should be denied.

I. **There is No Legal Basis to Require Pre-Review of Non-Privileged Materials by Wolfson Before Their Release to the Government's Case Team**

The defendant's request for a pre-review protocol before non-privileged materials are released by the Government's Filter Team to the Case Team is unsupported and impractical. The cases upon which Wolfson relies are easily distinguishable because they either (1) involve materials seized from a lawyer—which Wolfson is not—and therefore implicate unique considerations regarding the attorney-client privilege, or (2) require a pre-release review procedure only for a limited subset of potentially privileged materials—which, notably, is something the Government has already agreed to here. Wolfson does not cite, and the Government is not aware of, a single case from this Circuit in which a non-attorney defendant was permitted to do a pre-review of *all* materials seized pursuant to a search warrant prior to the release of any materials to a case team. Imposing the requested pre-release review by the defendant for *all* materials seized, moreover, would create significant delays with regard to regarding materials that are already properly within the Government's possession.

As noted above, "the use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications." *In re Search Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150, at *2. Where, as here, material is "already in the government's possession . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *United States v. Avenatti*, 559 F. Supp.3d 274, 282 (S.D.N.Y. 2021) (quoting In *re Grand Jury Subpoenas*, 454, F.3d 511, 522-23 (6th Cir. 2006)).

Most of the authority on which Wolfson relies in arguing that he should get to pre-review documents before they are released to the Case Team is easily distinguishable because it involves materials seized directly from lawyers or law firms. *See, e.g.*, *Avenatti*, 559 F. Supp.3d 274, 276-77 (S.D.N.Y. 2021) (iCloud account used by Avenatti, a "formerly high-profile lawyer"); *United States v. Scott*, No. 17 Cr. 630 (S.D.N.Y.) (documents seized from residence of Mark Scott, a partner at a prominent international law firm)[3]; *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Means*, 11 F.4th 1235, 1249 (11th Cir. 2021) (materials seized included items from office of an in-house attorney);[4] *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) (materials seized from law firm). Even the provision of the Justice Manual that Wolfson relies on for the proposition that the Government must ensure that the Case

---

[3] *See Former Law Firm Partner Sentenced to 10 Years In Prison For Laundering $400 Million of OneCoin Fraud Proceeds*, Press Release, United States Attorney's Office, Southern District of New York, available at https://www.justice.gov/usao-sdny/pr/former-law-firm-partner-sentenced-10-years-prison-laundering-400-million-onecoin-fraud

[4] The Justice Manual instructs prosecutors to treat "searches of business organizations where such searches involve materials in the possession of individuals serving in the capacity of legal advisor to the organization" as "Searches of Premises of [A] Subject Attorney[]" that require special precautions. Justice Manual § 9-13.420.

Team is not improperly tainted relates specifically to "Searches of Premises of [a] Subject Attorney"—which Wolfson, undisputedly, is not.[5]  Justice Manual § 9-13.420

Searches of lawyers' premises or accounts raise several unique concerns warranting special precautions, as the Justice Manual recognizes.  Such searches are particularly likely to result in the seizure of substantial material that should be protected by a legitimate claim of privilege, and in many cases that privilege may be held by a third-party as opposed to the user of the premises or accounts.  Broad searches through an attorney's premises or accounts, moreover, may have potential chilling or other detrimental effects on legitimate attorney-client relationships.  *See* Justice Manual § 9-13.420; *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 176, 179-80.  Those unique concerns are not implicated here, where the defendant is not a lawyer and the materials seized did not come from a lawyer or law firm.

The other cases on which Wolfson relies likewise do not support his argument.  To the contrary, they suggest that the Government's filter review process is appropriately and reasonably designed and should move forward as planned.  Specifically, the Government has agreed to produce any potentially privileged materials involving lawyers and law firms to Wolfson for his review, and that he—not the Filter Team—will be able to make the initial determinations as to whether there is any applicable privilege to assert before any such materials are released to the Case Team.  This is entirely consistent with the cases relied on by Wolfson that did not involve seizures of materials from lawyers.  For example, in *In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006), the court granted an opportunity to review for privilege documents prior to release to the case team, but in that case the appellants were seeking pre-review only of "documents that contain the names of particular lawyers, law firms, and other entities." *Id*. at 522.  Similarly, in *United States v. Grant*, 24 Cr. 207 (BSJ), 2004 WL 1171258 (S.D.N.Y. May 25, 2004), the court approved a proposed filter review process in which the defendant was given an opportunity to review materials and raise objections before the release of those materials to the case team, but the defendant sought to do so only with respect to a limited subset that the filter team had already "identified as legal in nature." *Id*. at *1.  In other words, in both cases, the pre-review protocol encompassed only documents for which there was a specific reason to believe there might be a valid claim of privilege; there was, on the other hand, no issue raised as to the release of documents with no apparent connection to an attorney or law firm to the case team.  These cases are thus entirely consistent with the Government's filter review process, and provide no support for Wolfson's far more expansive assertion that he should be given an opportunity to pre-review *all* documents before release to the Case Team.

At its core, the premise of the defendant's motion is a bare-boned assertion, lacking any supportive details or on-point legal authority, that the Filter Team's review will not adequately protect attorney-client privilege.  But that premise has been repeatedly rejected in this District.  Because there is no basis to believe that the filter review process will be improper, Wolfson's claim

---

[5] This is not to say that the Government does not intend to take steps reasonably designed to protect any attorney-client privilege and ensure that the Case Team is not inadvertently tainted. That is the purpose of the filter review process that the Government routinely utilizes, as described above.  It is notable, however, that the circumstances in which the Justice Manual recognizes that additional precautions may be warranted are *not* applicable to this defendant.

that the filter review process will be inadequate is purely speculative. If he wishes to further improve the efficacy of the process, moreover, he has been invited to participate by identifying lawyers and law firms that may be involved in communications that should be withheld and by communicating with the Filter Team regarding any other potentially privileged materials that need to be identified. His motions thus should be denied.

## II. There Is No Legal Basis to Withhold the Defendant's List of Attorneys From the Government's Case Team

The defendant's argument that he should be permitted to share a list of attorney names with only the Filter Team, and not with the Case Team, similarly has no legal basis or precedent.

The Government is not aware of a single case in which a Government case team has been prohibited from viewing a list of attorneys provided by a defendant for purposes of a privilege review. Nor has the defense cited any. Indeed, just five months ago, a similar argument was squarely rejected by another court in this District. Specifically, in *United States v. Zeitlin*, the Honorable Lewis A. Kaplan held that a defendant who provided an attorney list to a Government filter team, but then sought to prevent it from being shared with the case team, had not "cited any persuasive authority that supports his . . . claim that his rights would be violated by provision of the List to the Case Team," noting that "[t]he List itself is not now (and it never was) privileged." 23 Cr. 419 (LAK), Dkt. 33) (S.D.N.Y. Nov. 27, 2023) (attached hereto as Exhibit A).

Here, the defendant acknowledges that an attorney list would not be protected by attorney-client privilege. (Def. Mem. at 10). Nor has the defendant articulated any specific reason why disclosure of a particular name or individual would be problematic. Rather, he argues that it would be a violation of his Fifth Amendment rights to require him to disclose an attorney list "to effectuate a review procedure that is properly designed to capture potentially privileged documents." (Def. Mem. at 10). The defendant provides no authority in support of his position, nor is the Government aware of any.

There is not, and cannot be, any violation of Wolfson's Fifth Amendment rights here, as he is not being compelled in any manner. If he chooses to engage with the Government regarding the filter review process, it will be on a voluntary basis and would require only the disclosure of non-privileged information—a mere list of names. Should he choose not to provide an attorney list, the Filter Team will conduct a filter review that utilizes the information currently available to the Case Team, as well as other search terms and targeted manual review, as described above, to reasonably protect any applicable attorney-client privilege. As discussed above, there is no reason to believe that the Government's filter review process will be inadequate should Wolfson decline to provide an attorney list.

As a practical matter, Wolfson ignores that the names of the attorneys he seeks to withhold are almost certainly already available to the Government, and would be required to be included in a privilege log should Wolfson assert privilege over any materials from the Devices. As Wolfson acknowledges, the Case Team is well aware of a number of potentially relevant attorneys, having received non-privileged materials from them pursuant to grand jury subpoenas or voluntary productions. (Def. Mem. 9). The Government is also already in possession of the information contained on the Devices pursuant to a judicially authorized search warrant. There is nothing

7

prohibiting the Filter Team from disclosing attorney names that it identifies during the filter review process to the Case Team—indeed, it is part of the standard filter review process. This exchange of non-privileged information between the Case Team and the Filter Team helps to further improve the efficacy of the filter review process.

Wolfson is also wrong to suggest that "the prosecution team has no reason to see the attorney names." (Def. Mem. at 9). As described above, it is the Case Team, not the Filter Team, that has the responsibility and the right to request a basis for the defendant's assertions of attorney-client privilege and that would engage in any necessary litigation regarding the appropriateness of any claims of privilege. This could include challenges based on either the Case Team's review of the attorney list or a privilege log, should Wolfson assert privilege after reviewing the materials segregated from the Devices as potentially privileged by the Filter Team. It would be unreasonable for the Case Team to be left in the dark, requiring the Filter Team—which has more limited familiarity with the relevant facts—to blindly adopt the Defendant's list, without any ability to assess it for potential overbreadth. Such a practice would enable defendants to submit, unchecked, sweeping lists of individuals to a filter team, including non-attorneys and perhaps even witnesses, victims, associates, and co-conspirators, and potentially obstruct a case team's timely and complete access to critical evidence that was lawfully seized.

Accordingly, there is no basis to preclude the Case Team from reviewing Wolfson's attorney list, should he choose to provide one, and the defendant's motion should be denied.

### III. The Defendant's Request for Injunctive Relief is Unwarranted And Should Be Denied

Wolfson's request for injunctive relief is wholly unwarranted. A party seeking a preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *JHT Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023). First, for the reasons discussed above, Wolfson's requests are wholly unsupported by law, and thus he cannot show that he is likely to succeed on the merits. Second, he has not shown that he is likely to suffer irreparable harm as he relies on the purely speculative assertion that the Government's filter review process will be inadequate and that the Case Team "could" receive privileged documents.[6] (Def. Mem. 11). Third, the balance of equities weighs in favor of the Government, which is already in possession of the materials pursuant to judicially authorized search warrants and where the Case Team has a right—and indeed, an obligation—to timely access and review the materials for evidence. Finally, the public interest in protecting attorney-client privilege is more than adequately addressed by the Government's filter review process, whereas the public interest in allowing the Government to efficiently review evidence, and preventing the defendant from obstructing or interfering with the Government's investigation and access to such evidence, weighs against granting injunctive relief.

---

[6] Wolfson further makes no attempt to explain why any inadvertent release of privileged materials could not be addressed through clawbacks, which are regularly used between parties when privileged documents are inadvertently received or produced. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003).

## **CONCLUSION**

For all of the reasons set forth above, the Court should deny the defendant's motions.

                                                Respectfully submitted,

                                                DAMIAN WILLIAMS
                                                United States Attorney

By:   /s Emily Deininger
        Emily Deininger / David Felton
        Assistant United States Attorneys
        (212) 637-2472 / 2299