UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>              v.<br><br>VADIM WOLFSON,<br>  a/k/a "Vadim Belyaev," and<br><br>GANNON BOND,<br><br>              Defendants. | S2 24 Cr. 91 (GHW) |


**THE GOVERNMENT'S OMNIBUS OPPOSITION TO
DEFENDANTS VADIM WOLFSON'S AND GANNON BOND'S
MOTIONS *IN LIMINE***


MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278

Emily Deininger
David R. Felton
Jane Kim
Assistant United States Attorneys
    *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 2

I.     DEFENDANTS' MOTIONS TO PRECLUDE EVIDENCE RELATING TO
       KOSTIN'S YACHTS SHOULD BE DENIED ................................................ 2

II.    WOLFSON'S MOTION TO PRECLUDE CERTAIN EVIDENCE MENTIONING
       THE NAME ▇▇▇▇▇▇ SHOULD BE DENIED.................................... 5

III.   WOLFSON'S MOTION TO PRECLUDE THE USE OF CERTAIN
       APPROPRIATE WORDS SHOULD BE DENIED...................................... 9

IV.    DEFENDANTS' MOTION TO PRECLUDE TESTIMONY AND ARGUMENTS
       ABOUT NATIONAL SECURITY AND GEOPOLITICAL CONSIDERATIONS
       SHOULD BE DENIED ....................................................................... 13

V.     WOLFSON'S UNTIMELY SUPPRESSION MOTION SHOULD BE DENIED .... 15

VI.    WOLFSON'S MOTION TO PRECLUDE A GOVERNMENT LAW
       ENFORCEMENT OVERVIEW WITNESS SHOULD BE DENIED AS MOOT ... 19

VII.   THERE IS NO BASIS FOR THE COURT TO MODIFY THE CURRENT
       SCHEDULE FOR PRETRIAL DISCLOSURES ........................................ 20

CONCLUSION ................................................................................................ 24

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motions *in limine* of defendants Vadim Wolfson and Gannon Bond. (Dkt. 139 ("Wolfson Mem."), Dkt. 143 ("Bond Mem.")).[1] For the reasons that follow, the Court should deny defendants' motions. Specifically, the Court should:

1. Deny defendants' motions to preclude evidence relating to Andrey Kostin's yachts because such evidence is material, relevant, probative, and not unduly prejudicial, and admissible as direct evidence against the defendants, for the reasons set forth below and in the Government's motions *in limine*. (Dkt. 144 ("Gov't MILs"), Argument § I.C).

2. Deny Wolfson's motion to preclude certain evidence of a co-conspirator's first name because such evidence is material, relevant, probative, and not unduly prejudicial.

3. Deny Wolfson's motion to preclude the use of certain words to describe the financial transactions, individuals, and entities in this case.

4. Deny defendants' motions to preclude references to "national security" and the "Russia/Ukraine" war in this case about U.S. sanctions against Russia, Russian entities, and Russian individuals, and defendants' violations of the International Emergency Economic Powers Act ("IEEPA").

5. Deny Wolfson's untimely and unsupported suppression motion.

6. Deny Wolfson's motion to preclude a Government law enforcement "overview" witness as moot.

7. Deny Wolfson's motion for the Court to modify the current schedule for pretrial disclosures.

---

[1] The Government is simultaneously filing a memorandum of law in opposition to defendants' motions *in limine* regarding the Government's experts. ("Gov't. Expert Opp.").

## ARGUMENT

### I.    DEFENDANTS' MOTIONS TO PRECLUDE EVIDENCE RELATING TO KOSTIN'S YACHTS SHOULD BE DENIED

For the reasons set forth in detail in its motion *in limine* to admit evidence of Kostin's ownership of certain yachts, (Gov't MILs at 21-25), defendants' motions to preclude evidence relating to Kostin's yachts should be denied (Wolfson Mem. at 5-7; Bond Mem. at 8-11, 19).

As discussed in its motions *in limine*, the Government intends to offer, as direct evidence of the charged offenses, evidence that shows how Kostin owned and maintained his assets (*i.e.*, Kostin's ownership practices), including Kostin's ownership of certain yachts, from at least in or about 2010 through at least in or about 2022, through shell entities and straw owners, and with the assistance of several close associates and agents—including "CC-1," "CC-2," and "CC-3"—who helped him manage and operate those assets, including the yachts and the Aspen Home.  (Gov't MILs at 21-25)  The Government does not intend to admit evidence that Kostin violated sanctions in connection with his ownership of those yachts, as alleged in Counts One and Two of the Indictment.  Nor does the Government seek to offer this evidence under Rule 404(b).

Evidence of Kostin's ownership practices, including the way in which he used shell entities and straw owners to indirectly own and control the yachts, and was assisted in doing so specifically by certain co-conspirators who also assisted Kostin in owning and managing the Aspen Home, is direct evidence of the charged IEEPA offenses.  (*Id.* at 23-25)  Indeed, in granting the Government's motion to depose two yacht witnesses under Rule 15, the Court concluded that such evidence is relevant and material because it is "'highly relevant'" to a "'central issue in the case,' namely, whether CC-2 and CC-3 are close associates of Mr. Kostin."  (Dkt. 147 (Court's Memorandum Opinion & Order of April 3, 2025) at 15 (quoting *United States v. Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2025)))  Notably, in opposing

the Government's Rule 15 motion, defendants conceded the materiality of the yacht witnesses' testimony—a concession that the Court deemed "well placed."  (*Id.*).[2]

As discussed in full in its motions *in limine*, uncharged acts are admissible in a conspiracy case when the evidence is helpful to explain the relationship between co-conspirators, complete the story of the crime charged, or provide background for the events alleged in the indictment. (Gov't MILs at 10-12, 23-25); *see also United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999); *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994).  Here, evidence about Kostin's ownership practices, including his ownership of certain yachts, is necessary and relevant for all of these reasons.  The evidence further establishes the roles of key co-conspirators of the charged offenses, including CC-1, CC-2, and CC-3, as Kostin's associates and representatives for purposes of holding Kostin's assets, which directly relates to their provision of the same or similar services in connection with the Aspen Home.  Kostin's substantially similar ownership practices, and the roles of these respective co-conspirators, are highly relevant and probative of the charged offenses, and they provide the jury with important context and background.  (Gov't MILs at 23-25).

Likewise, none of the yacht evidence—which the Government will admit in a streamlined way to show how Kostin owned and maintained his assets, not to fixate needlessly on the yachts' value or amenities—is excludable under Rule 403 as unduly prejudicial.  While "persistent appeal[s] to class prejudice" are of course "improper and have no place in a court room," *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980) (collecting cases), courts have repeatedly held that evidence related to spending, income, and assets is admissible, *see, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006); *United States v. Hoey*, No. 15 Cr. 229 (PAE),

---

[2] Unless otherwise noted, case and record quotations omit internal quotation marks, case and record citations, previous alterations, and footnotes.

(S.D.N.Y. Mar. 9, 2016), Dkt. 60 at 18:10-24:22, *aff'd*, 725 F. App'x 58, 60-61 (2d Cir. 2018) (summary order); *United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 815915, at *2 (S.D.N.Y. Mar. 5, 2013); *see also United States v. Addario (Bartok)*, 662 F. App'x 61, 63-64 (2d Cir. 2016) (summary order); *United States v. Cusack*, 229 F.3d 344, 348 (2d Cir. 2000) (per curiam). The proposed measured presentation of the yacht evidence here is a far cry from the unique circumstance in *Stahl*, where the prosecutor there made "persistent appeal[s] to class prejudice," 616 F.2d 30, 33. No such appeals to class prejudice will occur here; rather, the Government will focus its evidence on how Kostin owned and maintained his assets (through shell entities and straw owners with the assistance of several trusted associates and agents), not by dwelling unnecessarily on the yachts' value or by appealing to class prejudice at all, much less "persistent[ly]" so appealing. *Id.* That Kostin owned other assets using shell entities, nominee straw owners, and the assistance of specific trusted co-conspirators is not any more inflammatory than the conduct at issue with respect to the charged scheme regarding the Aspen Home, and it is certainly not so unduly prejudicial as to substantially outweigh the highly probative value of this evidence under Rule 403.

To the extent there is any risk of unfair prejudice from admission of this otherwise probative evidence, the Government does not oppose the use of limiting instructions to safeguard against any potential prejudice and remind the jury that the defendants are not on trial for any offense other than the crimes charged and are not alleged to have been involved with any offenses relating to any of Kostin's assets other than the Aspen Home. *See, e.g.*, *United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987); *Quattrone*, 441 F.3d at 187; *see generally Parker v. Randolph*, 442 U.S. 62, 75 n.7 (1979). Any risk that this evidence will result in the charges being "impermissibly broadened," (Bond Mem. 10-11), is thus eliminated by the proposed focused presentation of this

evidence at trial and the fact that it will be undisputed (and the Government does not oppose the jury being so instructed) that the defendants are not on trial for any offense other than the crimes charged and are not alleged to have been involved with any offenses relating to the yachts. *See generally Parker*, 442 U.S. at 75 n.7 ("The 'rule' – indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions."); *United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

For these reasons and those set forth in detail in the Government's motion *in limine* to admit evidence of Kostin's yacht ownership (Gov't MILs at 21-25), the defendants' motions to preclude evidence relating to Kostin's yachts should be denied.

## II.    WOLFSON'S MOTION TO PRECLUDE CERTAIN EVIDENCE MENTIONING THE NAME ▓▓▓▓▓▓▓ SHOULD BE DENIED

Wolfson moves to preclude certain evidence mentioning the name ▓▓▓▓▓[3] on relevance and Rule 403 grounds and Bond joins the motion. (Wolfson Mem. 7-10; Bond Mem. 19). The motion should be denied.

In support of his motion, Wolfson points to two pieces of evidence—(1) contact information from Wolfson's phone for Kostin's assistant ▓▓▓▓▓ with no listed surname, and (2) potential testimony from Rule 15 deposition witness ▓▓▓▓▓▓ that, during the course of his work on the *Sea & Us* yacht project for Kostin, he interacted with a woman named ▓▓▓▓ who worked for Kostin as part of his project management group (▓▓▓▓▓▓▓▓▓▓▓

---

[3] The Government respectfully seeks permission to file a redacted version of its memorandum of law. The Government has designated proposed redactions in the motion papers to protect the identities of witnesses prior to trial. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). The Government also makes this request in accordance with the parties' protective order (Dkt. 38 ¶ 5). Accordingly, the Government respectfully requests that the Court permit the Government to file the redacted memorandum of law.

████ )—that he seeks to preclude.  (Wolfson Mem. 8).  Wolfson asserts that because the name

████ is so common, without more, the two pieces of evidence cited above "cannot meet the

minimal standard of relevance" and, even if they were relevant, "the chance that the jury would be

confused or would make unwarranted assumptions to Mr. Wolfson's detriment would support

excluding such evidence under Rule 403."  (Wolfson Mem. 10).  He is wrong.

The two cases cited by Wolfson do not support his novel request for *ex ante* preclusion of

the challenged evidence on Rule 401 or Rule 403 grounds.  Neither of these two cases stands for

the proposition that evidence of a co-conspirator's first name should be excluded from trial.

Rather, these cases evaluate, in the distinct context of a post-trial, Rule 29 sufficiency-of-the-

evidence challenge, whether there was sufficient evidence to prove that the defendants there had

qualifying felony convictions to sustain their felon-in-possession of a firearm or ammunition

convictions under 18 U.S.C. § 922(g)(1).  *See United States v. Jackson*, 368 F.3d 59 (2d Cir. 2004);

*United States v. Noble*, No. 07 Cr. 284 (RJS), 2008 WL 140966, at *4 (S.D.N.Y. Jan. 11, 2008).

In other words, both *Jackson* and *Noble* addressed the wholly inapposite issue of whether

deficiencies in properly identifying the *subject* of the prior conviction records introduced at trial

rendered the trial evidence insufficient to prove beyond a reasonable doubt that the defendants (as

opposed to someone else) in fact had qualifying felony convictions.  *See Jackson*, 368 F.3d at 63-

74; *Noble*, 2008 WL 140966, at *4-5.  Here, by contrast, the issue is merely whether the challenged

evidence can satisfy Rules 401 and 403, not whether the challenged evidence, by itself, is sufficient

to sustain an element of the offense beyond a reasonable doubt.  *Cf. Jackson*, 368 F.3d at 69 ("The

prosecution is not compelled to prove every fact beyond a reasonable doubt-only the essential

elements of the offense charged.").

If evidence is relevant to a charged offense, it is generally admissible at trial. Fed. R. Evid. 402. As the Second Circuit has explained, "[r]elevance under the [Federal Rules of Evidence] is a low threshold, easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019). Unlike the Rule 29 sufficiency of the evidence standard, which requires sufficient evidence of each element beyond a reasonable doubt, in order to be relevant under Rules 401 and 402, "evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *Id.*; *see also United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) ("[T]he definition of relevance under [FRE] 401 is very broad."); *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (explaining that Rule 401 is a "very low standard"). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997); *accord United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991).

As for Rule 403, evidence is admissible under this Rule if its probative value is not substantially outweighed by the danger of unfair prejudice. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The prejudice that Rule 403 refers to is *unfair* prejudice because, by definition, "any proof highly probative of guilt is prejudicial to the interests of [the] defendant," whereas evidence is inadmissible only if it is prejudicial for some reason beyond just proving "the fact or issue that justified its admission

7

into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (citation omitted); *see* Rule 403 advisory committee note ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("[B]ecause virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

The ▇▇▇ contact information and ▇▇▇▇▇▇ evidence meet the requisite relevance standard, which is a "very low standard," *White*, 692 F.3d at 246, and a "low threshold, easily satisfied," *Gramins*, 939 F.3d at 450. Wolfson's possession in his phone of contact information for Kostin's assistant ▇▇▇ is relevant in establishing, among other things, Wolfson's relationship with Kostin, Wolfson's knowledge that Kostin had been sanctioned, and Kostin's association with CC-3. Likewise, ▇▇▇▇ potential testimony that he interacted with a woman named ▇▇▇ who worked for Kostin as part of his project management group (▇▇▇ ▇▇▇▇▇▇▇), is relevant in establishing how Kostin owned and maintained his assets and Kostin's association with CC-3 through CC-3's assistance with the management of Kostin's projects and assets. As for Rule 403, there is no support for Wolfson's uncited assertion that the evidence's probative value will be substantially outweighed by a danger of unfair prejudice, confusing the issues, or the jury "mak[ing] unwarranted assumptions to Mr. Wolfson's detriment." (Wolfson Mem. 10).

To the extent Wolfson challenges the strength of this evidence, such a challenge properly goes to the evidence's weight, not its admissibility. Indeed, Wolfson fails to cite a single case, and the Government is aware of none, precluding evidence of this sort before trial on Rule 401 or Rule 403 grounds. If Wolfson finds the evidence unpersuasive of his guilt, he is free to cross-examine the witnesses and so argue to the jury. And like the defendants in *Jackson* and *Noble*, Wolfson is

free to move under Rule 29, at the appropriate time, for a judgment of acquittal based on the insufficiency of the full evidentiary record. *See Noble*, 2008 WL 140966, at 2. But what no authorities permit is what Wolfson seeks here: the preclusion of such evidence before trial on Rule 401 or Rule 403 grounds. The Court should reject this meritless request.

## III.    WOLFSON'S MOTION TO PRECLUDE THE USE OF CERTAIN APPROPRIATE WORDS SHOULD BE DENIED

Wolfson moves under Rule 403 to preclude use of various terms, such as "shell," "front," "sham," "straw," "tax haven," and additional unspecified "similarly unfairly prejudicial terms." (Wolfson Mem. 1-5). Bond joins the motion. (Bond Mem. 19). The motion should be denied.

The Court should permit accurate references to the use of shell companies, straw purchasers and owners, tax havens, and the other referenced terms—rather than requiring the Government to use a definition of each of these terms each time it references them before the jury. Wolfson's motion is premised on the assertion that these terms are inherently and unfairly prejudicial. But a term's permissibility must be evaluated in context. *Cf., e.g.*, *United States v. Banki*, 685 F.3d 99, 120 (2d Cir. 2012) (appropriateness of arguments must be evaluated "within the context of the entire trial"). For this reason, the overwhelming majority of courts—none of which Wolfson cites in his motion—typically do not preclude the use of these and other similar, purportedly prejudicial terms if they have some basis in the evidence. *See, e.g.*, *United States v. Abdullaev*, 761 F. App'x 78, 83 (2d Cir. 2019) (summary order) (describing trial evidence that witness "served as Director of [a relevant entity's] corporate shell" and observed "how [a relevant entity's] Russian clients used shell companies to pay their invoices"); *United States v. Guo*, No. 23 Cr. 118 (AT), 2024 WL 1862022, at *4 (S.D.N.Y. Apr. 29, 2024) (denying motion to preclude references to "shell company/corporation," "figurehead executives," "straw owners," "alter ego," and similar terms at trial provided that Government lays a sufficient factual predicate at trial); *see*

*also United States v. Motovich*, No. 21 Cr. 497 (WFK), 2024 WL 3303723, at *3 (E.D.N.Y. July 2, 2024) (denying motion to preclude references to "shell company" or "shell companies" at trial provided that Government lays a sufficient factual predicate at trial); *United States v. Runner*, No. 18 Cr. 578 (JS), 2023 WL 3727532, at *5 (E.D.N.Y. May 30, 2023) (denying motion to preclude references to "shell companies" in fraud and money laundering case provided that Government lays a sufficient factual predicate at trial). Neither the Government nor its witnesses should be precluded from referencing terms that accurately describe the entities and transactions at issue.

Wolfson fails to cite a single case precluding references to the terms "front," "sham," "straw," and any of the additional unspecified "similarly unfairly prejudicial terms." (Wolfson Mem. 1). As for the other two terms, Wolfson's motion cites a single civil case that precluded references to a "tax haven" and a single case that precluded references to "shell" companies. (*Id.* at 2 (citing *United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013) (shell company); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04 Civ. 10014 (PKL), 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (tax haven)). But a full view of the case law points to a different standard: these terms are presumptively "neutral" and should be permitted where "a factual predicate . . . shows the subject entities are shell companies prior to usage of the descriptive term." *Runner*, 2023 WL 3727532, at *5 (distinguishing *Watts* and denying similar motion where indictment alleged defendant used various entities in connection with fraud and money laundering); *Guo*, 2024 WL 1862022, at *4 (distinguishing *Watts* and denying similar motion); *Motovich*, 2024 WL 3303723, at *3 (distinguishing *Watts* and denying similar motion); *see also United States v. Stein*, 429 F. Supp. 2d 633, 647 (S.D.N.Y. 2006) (declining to strike the terms "tax haven," "phony," and "concoct" from an indictment because they were relevant to the charged conspiracy); *United States v. Ferguson*, 478 F. Supp. 2d 220, 235 (D. Conn. 2007) (citing *Stein*

and declining to strike the terms "phony," "fake," and "sham" from an indictment because they were relevant to the charges).  Indeed, in the barely two years since *Watt* was decided—Wolfson's sole cited authority regarding the term "shell"—at least three district courts have distinguished that outlier decision.  *See Guo*, 2024 WL 1862022, at *4; *Motovich*, 2024 WL 3303723, at *3; *Runner*, 2023 WL 3727532, at *5.

Contrary to Wolfson's argument, a "shell" corporation is a common descriptor of a corporate entity that exists solely or primarily to serve the purposes of another person or entity. *See, e.g.*, SHELL CORPORATION, Black's Law Dictionary (11th ed. 2019) (defining the term neutrally as "[a] corporation that has no active business and usu[ally] exists only in name as a vehicle for another company's business operations").  For that reason, "shell corporation" and similar terms often serve a useful explanatory function in cases involving allegations of the transfer and concealment of assets.  *See, e.g.*, *Abdullaev*, 761 F. App'x at 83 (describing witness testimony about shell companies); U.S.S.G. § 2S1.1(b)(3), cmt. n.5 (suggesting consideration of use of "shell corporations" in determining whether to apply "sophisticated laundering" enhancement). Wolfson's additional argument—that the terms "straw" owner or purchaser should be precluded because they "improperly presuppose the answer to the ultimate question" in this case (Wolfson Mem. 4)—misstates the law.  The Federal Rules of Evidence prohibit only *unfairly* prejudicial evidence—and "communicat[ing] a conclusion to the jury" is the very purpose of advocates' arguments and the testimony and evidence they seek to elicit.  *See Old Chief v. United States*, 519 U.S. 172, 180 ("'Unfair prejudice' within its context means an undue tendency to suggest decision *on an improper basis . . .*" (quoting Fed. R. Evid. 403, advisory committee's notes) (emphasis added))); *see also* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").  In any event, a court in this District recently denied a similar motion to

preclude references to the terms "straw owners" and "alter ego," among others.  *Guo*, 2024 WL 1862022, at *4.

As the Indictment returned by the grand jury alleges and as the Government expects the evidence at trial will show, there is an ample factual basis for the challenged terms.  As alleged in the Indictment, for years, beginning by at least in or about 2010 and including through the time period charged in the Indictment, Kostin used various shell companies, nominal owners, and trusted associates—including Wolfson, CC-1, CC-2, and CC-3—to obscure and conceal his ownership of various assets, including his ownership of the Aspen Home.  (Indictment ¶¶ 1, 2, 5-10).  As one example, between in or about 2010 through in or about December 2013, 40 North Star's parent company, and 100% shareholder, was a shell company called Soltrop Holdings Limited ("Soltrop"), which itself was owned by a nominee company that held the shares in trust, for yet another shell company, which held them in trust for an individual other than Kostin.   As another example, 40 North Star LLC's only asset was the Aspen Home.  And as yet another example, 40 North Star LLC, in turn, was the only asset of Altamonte, which had no other active business or operations.  Indeed, Wolfson concedes as much, as he acknowledges that the purpose of 40 North Star and Altamonte was merely "to facilitate Mr. Wolfson's ownership of the Aspen property."  (Dkt. 139 at 3-4).[4]  Accordingly, as the trial evidence will show, the "shell" term squarely applies to the relevant entities.  Likewise, Dr. Louise Shelley's proposed expert testimony spelled out in her expert disclosure and the *Daubert* motion papers concerning, among other things,

---

[4] The Government does not dispute that such corporate entities can be lawfully used for certain purposes, and the defendants may cross-examine appropriate witnesses on that subject.  Contrary to Wolfson's suggestion, however, the fact that they may be used for lawful purposes does not mean, however, that they are not, and should not be described as, "shell" entities that do not have any active business operations.  (*See* Wolfson Mem. at 3-4).

tax or corporation formation havens, provides a more than sufficient factual predicate for use of those terms.

Consistent with the weight of authority, the Court should thus deny Wolfson's motion and find that shell companies, straw purchasers and owners, tax havens, and the other challenged terms are presumptively neutral and can appropriately be referenced at trial if they are consistent with other evidence in the case. *See, e.g.*, *Motovich*, 2024 WL 3303723, at \*3; *Guo*, 2024 WL 1862022, at \*4; *Runner*, 2023 WL 3727532, at \*5; *Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, No. 18 Civ. 0529 (WJF) (NPM), 2023 WL 2664200, at \*5 (M.D. Fla. Mar. 28, 2023) (denying without prejudice motion to exclude reference to "shell company"); *H&L Farms LLC v. Silicon Ranch Corp.*, No. 21 Cv. 0134 (CDL), 2023 WL 1795705, at \*6 (M.D. Ga. Feb. 7, 2023) ("If there is evidence that any of the defendants is a shell corporation . . . then Plaintiffs shall not be precluded from using the term 'shell company.'"); *DNT, LLC v. Sprint Spectrum, LP*, No. 09 Cv. 0021 (JRS), 2010 WL 582164, at \*4-5 (E.D. Va. Feb. 12, 2010) (finding "shell company" to be a "neutral term[]" and permitting references should the term be "accurate").

## IV.    DEFENDANTS' MOTION TO PRECLUDE TESTIMONY AND ARGUMENTS ABOUT NATIONAL SECURITY AND GEOPOLITICAL CONSIDERATIONS SHOULD BE DENIED

In this case involving violations of the International Emergency Economic Powers Act (*i.e.*, IEEPA) and a series of escalating sanctions against Russia and Russian entities, banks, and individuals instigated by the Russia-Ukraine war and publicly announced through Presidential Executive Orders, Wolfson seeks to bar the Government from eliciting important and relevant context and evidence relating to defendants' knowledge, intent, and motive.  (Wolfson Mem. 10-12).  Bond joins the motion and likewise moves to exclude evidence concerning the sanctions regime and background leading to the imposition of sanctions on Kostin.  (Bond Mem. 6-8; 19);

(*see also id.* at 15 (Bond acknowledging that the case "cannot and should not be tried in a vacuum" and conceding that "some limited background evidence is necessary for context," but nonetheless asking for "strict limitations" to the "politically charged nature" of the OFAC witness's testimony)).

As discussed in the Government's opposition to defendants' motion to exclude testimony from an OFAC witness also filed today (Gov't Expert Opp. at 24-33), evidence of how sanctions programs work and the progression and escalation of sanctions against Russia beginning in 2014 through 2018 is relevant, probative, and not unduly prejudicial. The defendants' request is akin to asking the Court to preclude the Government from referencing "terrorism" in a terrorism case or "victim" or "rape" in a sex abuse case. Such evidence assists the jury in understanding what sanctions are and how they are imposed, and also provides probative evidence of the defendants' knowledge of sanctions and knowledge and anticipation of the escalation of sanctions. (*See id*.) Among other things, evidence that Russian invasion of the Crimean Peninsula began in February 2014 and that Executive Orders announcing that sanctions would be imposed on Russian individuals and entities meeting certain criteria were publicly issued in March 2014, just approximately two months before Kostin nominally transferred the Aspen Home to Wolfson via Altamonte, is highly probative of defendant Wolfson's knowledge of sanctions and Wolfson and Kostin's motive and intent when they inserted Altamonte into the Aspen Home's ownership structure. The terms the defendants seek to preclude are essential in presenting the evidence to the jury and the Court should not hamstring the Government or force it to dance around facts.

Notwithstanding the above, the Government does not intend to focus its presentation of evidence on the reasons compelling the imposition of sanctions against Russia or to dwell on issues pertaining to "national security." Instead, the Government intends to generally elicit testimony

14

regarding how sanctions programs typically work and the relevant Executive Orders, including when they were publicly announced and their general substance. It plans to refer to a "national emergency," and/or the "Russia-Ukraine war" as sparingly as possible. In addition, the Government has proposed in its *voir dire* questions relating to sanctions and the Russia-Ukraine war, Kostin, SDNs, and Russian nationals that would ensure that any prospective jurors who would not be able to set aside their views on these topics and could not be fair and impartial would be dismissed for cause. (Dkt. 152 ¶¶ 28-31).

## V.    WOLFSON'S UNTIMELY SUPPRESSION MOTION SHOULD BE DENIED

Wolfson moves to suppress documents outside the specified date ranges in four warrants. (Wolfson Mem. 12). Bond joins the motion. (Bond Mem. 19). This untimely suppression motion should be denied without prejudice.

To start, the Government does not intend to admit evidence at trial that is outside the date range of an applicable search warrant for any of the electronic devices or accounts encompassed by the four warrants listed in Wolfson's motion that either of the trial defendants would have standing to challenge. Wolfson's motion is thus moot and should be denied without prejudice to renewal should these circumstances change.

Given this representation, there is no need for the Court presently to engage further with this motion. It should be noted, however, that Wolfson's motion further lacks merit because: (a) to the extent Wolfson's motion seeks suppression of evidence, it is untimely; (b) Wolfson (and Bond) lack standing to challenge much of the evidence at issue; and (c) a judicially authorized warrant obtained before Wolfson filed his motion almost wholly eliminates Wolfson's claim as to one of the four challenged warrants.

As to the first of these defects, "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause."  Fed. R. Crim. P. 12(c)(3); *see id.* 12(b)(3)(C) (Rule 12 motions include suppression motions).  Here, the Court ordered that pretrial motions be filed by November 22, 2024, and adjourned the deadline to November 25, 2024.  (Dkts. 61, 70).  As the Court is well aware, on or about November 25, 2024, defendants filed numerous suppression motions relating to various items, including the warrants at issue.  (Dkts. 79; 83 at 9-13; 87 at 10-21).  On March 12, 2025, the Court held a full-day hearing as to some of these warrants.  Yet defendants never raised the instant suppression argument until the motions *in limine* deadline four months after the pretrial motions deadline had passed.  Defendants have not attempted to cite any cause, much less the required good cause, as to why they failed to timely object, nor should they be permitted to do so for the first time in reply.  The instant motion, in which defendants expressly seek suppression of warrant evidence, (Wolfson Mem. 12), thus fails because it is untimely under Rule 12(c)(3).

Next, to the extent the motion is not untimely, Wolfson and Bond lack standing to challenge much of the evidence at issue.  The Fourth Amendment to the U.S. Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  It is well established that "Fourth Amendment rights are personal rights that may not be vicariously asserted."  *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)).  "The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place searched."  *Haqq*, 278 F.3d at 47; *see also*

*United States v. Fields*, 113 F.3d 313, 322 (2d Cir.1997) ("The ultimate focus of Fourth Amendment analysis remains whether the defendant had a reasonable expectation of privacy in the place searched."). A defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731 (1980) (emphasis in original). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id.*

A defendant seeking suppression bears "the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 130 n.1; *see also Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *United States v. Pena*, 961 F.2d 333, 336 (2d Cir. 1992). "[T]he burden on the defendant to establish [Fourth Amendment] standing is met *only* by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Montoya-Escheverria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (emphasis added); *see also United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993) ("It is well established that in order to challenge a search, a defendant must submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search"), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995); *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (holding that the defendant lacked standing to challenge a search of

cellphone information where "he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them" or that he had "a privacy interest in the cell phones in some other manner"); *United States v. Mathieu*, No. 16 Cr. 763 (LGS), 2018 WL 5869642, at *2 (S.D.N.Y. Nov. 9, 2018) ("Absent any showing that the email accounts belong to [defendant], Defendant has no basis for challenging the warrant on Fourth Amendment grounds.").

In connection with the instant motion, Wolfson and Bond have not attempted to establish standing as to any of the evidence obtained from the four warrants. But more specifically, even had they so attempted, they cannot establish standing as to information associated with a number of accounts covered by the four cited warrants, since the accounts indisputably do not belong to Wolfson or Bond (and neither has ever attempted to so claim). Those include email and/or iCloud accounts for: (1) ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████. (USAO_00000315-18). Thus, defendants lack standing to challenge, at a minimum, any evidence associated with the above six accounts.

Finally, a judicially authorized warrant issued on March 27, 2025, largely eliminates Wolfson's challenge as to one of the warrants, pertaining to the electronic devices that were seized from Wolfson's and Bond's residences. On March 27, 2025, the day before Wolson filed his motion, the Honorable Valerie Figueredo, U.S. Magistrate Judge, Southern District of New York, authorized a search and seizure warrant for a Wolfson cellphone, a Wolfson iPad, and a Bond cellphone for the time period between May 1, 2014, and February 22, 2024. (USAO_00123060,

18

USAO_00123079).[5]  This warrant thus largely eliminates Wolfson's challenge (in the second bullet in his motion, (Wolfson Mem. 12)), regarding documents outside the January 1, 2018, through March 31, 2022, time period for the foregoing devices, since the March 27, 2025 warrant authorizes review of materials for the broader time period between May 1, 2014 and February 22, 2024.[6]

In sum, since the Government does not intend to admit evidence at trial which either of the trial defendants has standing to challenge and that would fall outside the specified date range of a relevant warrant, the Court should deny the motion without prejudice to renewal in the unlikely event that the following criteria are satisfied: (a) the Government offers evidence at trial from outside the specified date range of a warrant; and (b) a defendant has standing to challenge the warrant.

## VI.    WOLFSON'S MOTION TO PRECLUDE A GOVERNMENT LAW ENFORCEMENT OVERVIEW WITNESS SHOULD BE DENIED AS MOOT

Wolfson's motion to preclude a Government law enforcement overview witness, which Bond joins, should be denied as moot.  (Wolfson Mem. 13-14; Bond Mem. 19).  The Government does not intend to call a law enforcement overview witness—that is, an agent to testify about the investigation against the defendants, the kinds of evidence obtained, and the Government's theory of the case.  Such testimony would be improper.  *See United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005).

---

[5] The Government produced this warrant to the defendants on April 10, 2025, after Wolfson filed his motion.

[6] Separately, in the fourth bullet in his motion, Wolfson supplies an incorrect date range for that warrant of January 1, 2018, through December 6, 2023.  (Wolfson Mem.. 12).  The warrant authorized the review of information from May 1, 2014 to December 6, 2023.  (*See* USAO_00000623).  In the first bullet of his motion, Wolfson correctly identifies the date range for a related Apple warrant.  (Wolfson Mem. at 12).

The Government notes, however, that it does plan to call summary witnesses (either agents, analysts, or paralegals), which are entirely proper, and have been called by the Government in a substantial number, if not the vast majority of, trials in this District.  For example, the Government may call a summary witness to read key, properly admitted, evidence to the jury, including email and other communications, and highlight portions of admitted business documents and other records for the jury.  The Government may also call a summary witness to present summary charts to the jury.  Again, such summary witnesses are entirely proper and routinely permitted in this District.  *See, e.g.*, *United States v. Menendez*, No. 23 Cr. 490 (SHS) (S.D.N.Y. 2024) (permitting summary witness); *United States v. Whitehead*, No. S1 22 Cr. 692 (LGS) (S.D.N.Y.) (permitting agent to read email and text communications between the defendant and others to the jury); *United States v. Hadden*, No. S2 20 Cr. 468 (RMB) (S.D.N.Y. 2023) (permitting paralegal to present summary charts to the jury); *United States v. Purcell*, No. 18 Cr. 81 (DLC) (S.D.N.Y. 2016) (permitting paralegal to read defendant's Facebook messages and posts to the jury).  In addition, should the Court permit the defendant's proposed expert, William McCausland, to testify, the Government will likely seek to call a rebuttal expert to present testimony to rebut Mr. McCausland's testimony.  (*See* Dkt. 137 at 19).

## VII.   THERE IS NO BASIS FOR THE COURT TO MODIFY THE CURRENT SCHEDULE FOR PRETRIAL DISCLOSURES

On March 25 and the morning of March 28, 2025, the Government conferred respectively with counsel for Bond and Wolfson.  During those calls, the Government proposed that the parties would exchange Section 3500/Rule 26.2 materials on May 26, 2025, three weeks in advance of trial, and that the parties would exchange exhibit lists on June 2, 2025, two weeks in advance of trial, with the parties to engage in good faith exchanges of exhibits as relevant to potential stipulations in advance of that date.  While defense counsel expressed a preference for earlier

disclosures, at no point did they indicate that they would be filing a motion on that subject.  Rather, the Government concluded the calls with the understanding that the parties were in agreement and would proceed consistent with the proposed disclosure schedule.

Wolfson now asks the Court to order the Government to produce Rule 404(b) materials at least 21 days before trial and witness and exhibit lists at least 30 days before trial.  (Wolfson Mem. 14-15).  Bond joins the motion and also seeks an order "directing the Government to identify which out-of-court statements it intends to introduce and the specific grounds for their admissibility." (Bond Mem. 16-19).  As to the Rule 404(b) materials request, except to the extent the Government learns of Rule 404(b) materials thereafter, the Government agrees to produce Rule 404(b) materials at least 21 days before trial.

As for witness and exhibit lists, there is no basis for the Court to depart from the Government's proposed—and believed to be agreed-upon—schedule whereby each party will produce witness lists three weeks before trial and exhibit lists two weeks before trial.  Even setting aside whether the parties had reached an understanding on these matters, there is no need for the significant advance disclosures of exhibit lists a full 30 days in advance of trial, particularly given that the Government has already agreed to an exchange of exhibits lists two weeks in advance of trial and has already produced the vast majority of the witness statements that will encompass the Section 3500 materials.

Nor is there any authority for Bond's uncited request for the Court to intervene and order "the Government to identify which out-of-court statements it intends to introduce and the specific grounds for their admissibility."  (Bond Mem. 16; *id.* at 16-19).  The Government is unaware of any precedent for Bond's request for such a pretrial disclosure above and beyond the Government's pretrial disclosure of its exhibits, an exhibit list, and witness statements, and Bond

cites none. Such a request is particularly unnecessary (and essentially moot) here where the Government has already (a) agreed to exchange Section 3500/Rule 26.2 materials three weeks in advance of trial, (b) agreed to exchange exhibit lists two weeks in advance of trial, and (c) identified many of the requested statements in its motions *in limine* to admit co-conspirator statements in furtherance of the conspiracy, statements of a party opponent,[7] statements regarding ownership of the Aspen Home, and statements of agents of the defendants and their co-conspirators. (Gov't MILs at 31-49). Moreover, even though trial is not scheduled until June 16, 2025, and, under 18 U.S.C. § 3500(a), witness statements are not subject to disclosure "until said witness has testified on direct examination in the [June 2025] trial of the case," the Government already has voluntarily, and long before it was required to, produced to the defense the witness statements in its possession. Likewise, the Government has been and remains willing to meet and confer with the defendants to attempt to resolve and streamline any evidentiary disputes. Given this record, no further Court action is required.

The status quo regarding further disclosures in this case—that is, wherein the parties privately agree to pretrial disclosure deadlines of witness and exhibit lists without the need for Court intervention—is a well-accepted and common practice in this District. (*See, e.g.*, *United States v. Glover*, No. 24 Cr. 370 (VSB), Dkt. 18 (S.D.N.Y. Jan. 10, 2025) (pretrial scheduling order leaving to the parties any deadlines for disclosure of witness and exhibit lists and not imposing a special requirement for the Government to identify which out-of-court statements it intends to introduce and the specific grounds for their admissibility); *United States v. Rodriguez*

_____

[7] Given the Government's disclosure of statements made by the defendants as party admissions, pursuant to Federal Rule of Evidence 801(d)(2)(A), (Gov't MILs at 38-40), defendants have received ample notice and information to address any issues sounding in the Confrontation Clause or *Bruton v. United States*, 391 U.S. 123 (1968), (Bond Mem. 18-19).

*and Hill*, No. 24 Cr. 82 (RMB), Dkt. 64 (S.D.N.Y. Dec. 11, 2024) (same); *United States v. Kelly*, No. 23 Cr. 113 (GHW), Dkt. 37 (S.D.N.Y. Sept. 7, 2023) (same)). And, with respect to the reasonableness of the Government's proposed schedule here, even in *United States v. Menendez*, No. 23 Cr. 490 (SHS), which involved a uniquely complex, multi-year investigation, multiple defendants, far reaching and varied criminal conduct, and overseas investigation, the court ordered that witness and exhibit lists there be disclosed only three weeks before trial and did not delineate a special requirement for the Government to identify, apart from its pretrial disclosure of exhibits and witness statements, which out-of-court statements it intended to introduce and the specific grounds for their admissibility. *See id.* at Dkt. 197 (S.D.N.Y. Feb. 23, 2024) (denying defense motion for order setting pretrial deadlines, including exhibits, two months before scheduled trial date); *id.* at Dkt. 247 (S.D.N.Y. Mar. 11, 2024) (ordering production of witness and exhibit lists, among other things, three weeks before scheduled trial date); *see also United States v. Scott*, No. 17 Cr. 630 (ER), July 16, 2019 Pretrial Conference Tr., Dkt. 104, at 12-13 (ordering disclosure of exhibit and witness lists two weeks before trial in complex money laundering case involving laundering hundreds of millions of dollars in multi-billion-dollar fraud); *United States v. Ingarfield*, No. 20 Cr. 146 (RA), Dkt. 72 (ordering disclosure of exhibit lists two weeks before trial in complex securities pump-and-dump fraud scheme involving trading conducted through dozens of shell entities); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 392-93 (S.D.N.Y. Aug. 7, 2002) (ordering that the Government produce its exhibit list one week prior to trial); *United States v. Earls*, No. 03 Cr. 0364 (NRB), 2004 WL 350725, at *9 (S.D.N.Y. Feb. 25, 2004) (ordering disclosure of exhibit list ten days before trial given "voluminous nature of Government's document production" and "complexity of the charges and the extended period of time covered therein"); *United States v. Rittweger*, 259 F. Supp. 2d 275 (S.D.N.Y. Apr. 23, 2002) (ordering

disclosure of exhibits one week before trial in multi-defendant case charging securities fraud, wire fraud, and violations of the Travel Act).

Accordingly, there is no basis for the Court to modify the Government's reasonable proposed—and believed to be agreed-upon—schedule for witness and exhibit lists or to depart from common practice in this District and specifically order the Government to identify which out-of-court statements it intends to introduce and the specific grounds for their admissibility.

## CONCLUSION

For the foregoing reasons, the Court should deny defendants' motions *in limine* consistent with the above.

MATTHEW PODOLSKY
Acting United States Attorney


By:     /s/ _____
        Emily Deininger
        David R. Felton
        Jane Kim
        Assistant United States Attorneys