

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 10, 2025

**BY ECF**
The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Andrey Kostin et al., No. 1:24-cr-0091 (GHW)</u>

Dear Judge Woods:

The Government respectfully writes in response to the Court's oral orders at the pretrial conference held on June 3, 2025, and the Order dated June 4, 2024 (Dkt. 210) requiring, by June 10, 2025, (1) the parties to submit a proposed limiting instruction regarding Gannon Bond's post-arrest statements; (2) the parties to submit any comments regarding the Court's proposed voir dire, description of the case, overview of the law, and jury selection procedures; and (3) the Government to review and submit any proposed revisions as to the Government's Request to Charge Request No. 11. This letter addresses each of those topics in turn.

**Proposed Limiting Instruction Regarding Gannon Bond's Post-Arrest Statements**

The Government introduced evidence that defendant Gannon Bond made statements to law enforcement after his arrest. You may consider Bond's post-arrest statements only in the case against him, and not against the other defendant, Vadim Wolfson. You may not consider or discuss Bond's post-arrest statements in any way when you are deciding if Wolfson is guilty or not guilty.

**Voir Dire**[1]

The Government respectfully proposes the following edits to the first paragraph on page three:

> . . . (2) that the defendants provided funds, goods, ~~and~~ *or* services for the benefit of a sanctioned individual, Mr. Kostin *and/or Mr. Kostin's companies*; (3) that the defendants received funds, goods, *or*~~and~~ services from Mr. Kostin and/or Mr. Kostin's companies; and/or (4) that the defendants caused approximately $12 million to *be transferred to* a company controlled by Mr. Kostin . . . .

---

[1] New proposed text is identified using *red italics*; proposed deletions using ~~red strikethroughs~~.

The Government respectfully proposes the following edits to the third paragraph on page three:

> . . . (2) providing funds, goods, ~~and~~ *or* services for the benefit of Mr. Kostin, whose property ~~and~~ *or* interests in property had been blocked pursuant to Executive Order 13661, ~~and~~ *or* to or for the benefit of companies that Mr. Kostin owned ~~and~~ *or* controlled, *in connection with the operation, maintenance, or improvement of the Aspen Home* ~~by dealing and causing others to deal with the Aspen Home~~; or (3) receiving funds, goods, ~~and~~ *or* services from Mr. Kostin ~~and~~ *or* from companies Mr. Kostin owned ~~and~~ *or* controlled, in connection with the operation, maintenance, ~~and~~ *or* improvement of the Aspen Home.

**Overview of the Law**

The Government respectfully proposes the following edits to the paragraph on the bottom of page one and top of page two:

> . . . . Those economic sanctions prohibit, among other things, certain transactions with or involving certain foreign governments, entities, ~~and~~ *or* individuals. Beginning on or about March 6, 2014, the United States imposed sanctions blocking property of the Russian government and certain Russian entities and nationals, which are deemed "Specially Designated Nationals." Among other things, these sanctions prohibit*: dealing in blocked property;* the provision of "*funds, goods, or* services*"* to or for the benefit~~"~~ of any Specially Designated Nationals *or companies owned or controlled by a Specially Designated National; or the receipt of "funds, goods, or services" from any Specially Designated Nationals or companies owned or controlled by a Specially Designated National*. As I told you earlier, on April 6, 2018, a part of the United States Treasury Department known as the Office of Foreign Assets Control, or "OFAC," designated Andrey Kostin, a Russian businessman, as a Specially Designated National—that is, a sanctioned or blocked person. This designation prohibits, among other things, *dealing in property owned by Mr. Kostin and* the provision of "*funds, goods, or* services*" from, by,* to*,* or for the benefit~~"~~ of Mr. Kostin.

**Description of the Case for Venire**

The Government respectfully proposes the following two edits:

- Second paragraph, line 6: "First, that they dealt *in* property that was blocked…"
- Second paragraph, line 8: "Second, that they provided funds, goods, ~~and~~ *or* services . . . ."

**Jury Selection Procedures**

The Government respectfully requests a third alternate juror in light of the anticipated length of the trial, including the possibility of defense cases.

**Government's Requests to Charge: Request No. 11**

During the June 3, 2025, pretrial conference, the Court made certain inquiries that the Government understands to have been referring to the last two paragraphs of Request No. 11 of the Government's Requests to Charge. (Dkt. 151). As relevant here, the Government expects the evidence to show that defendants Vadim Wolfson and Gannon Bond violated the International Emergency Economic Powers Act ("IEEPA") by (1) dealing with property—specifically, a home located at 40 Northstar Circle in Aspen, Colorado (the "Aspen Home") that was owned by Andrey Kostin—that was blocked as a result of the sanctions imposed on Mr. Kostin on April 6, 2018, including by providing funds, goods, or services for the benefit of Mr. Kostin and receiving funds, goods, or services from Mr. Kostin in connection with their use, management, and operation of the Aspen Home, and (2) causing, in September 2019, approximately $12 million to be paid to an entity called CapitalInvest for Mr. Kostin's benefit.

The Government proposes the following revisions to Request No. 11:

A "blocked account" or a "blocked property" includes any account or property held in the name of a blocked person or in which a blocked person has *an ownership interest. Blocked property includes all property and interests in property held by an entity or company in which a blocked person owns*, directly or indirectly, a 50 percent or greater interest. *Such property is blocked even if the entity or company is not expressly identified by OFAC as blocked or sanctioned.* Payments, transfers, exportations, withdrawals, and other dealings may not be made or effected to a blocked account or blocked property. ~~Property and interests in property are blocked, even if the property and interests themselves are not expressly identified by OFAC as blocked, if they are directly or indirectly owned, individually or in the aggregate, by one or more persons whose property and interests in property are blocked.~~ Here, any property that Kostin owned*, or in which Kostin had an ownership interest*, ~~indirectly or directly,~~ or *that were held by an entity or company in which Kostin* held, *directly or indirectly,* an interest of at least 50 percent in, qualified as blocked property subject to the prohibitions I just discussed.

Ownership *and ownership interests* may be established in different ways, including, for example, by title, possession, dominion, control, or management, or a financial stake in the property or interests in property. Ownership may include ownership through a "straw owner," or someone who nominally holds title to a property – that is, someone who holds title on paper or in name on behalf of somebody else. Merely holding title of a property, absent any of the other factors that indicate ownership, such as possession, dominion, control, ~~or~~ management, *or a financial stake,* may not be sufficient to establish ownership.

31 C.F.R. §§ 589.303 & 589.411; *United States v. The M/Y Amadea*, 23 Civ. 9304 (DEH), Dkt. 467 at 39-80 (discussing various indicia of ownership in the context of standing); *id.* at 49 ("In an

ordinary case, an interest that can establish standing may include 'actual possession, dominion, control, title, or [a] financial stake.'" (quoting *United States v. Contents of Acct. Nos. 208-06070 & 208-06068-1-2*, 847 F. Supp. 329, 333 (S.D.N.Y. 1994) (citing, *e.g.*, *Mercado v. U.S. Customs Servs.*, 873 F.2d 641, 644 (2d Cir. 1989))); *id.* (defining a "straw owner" as "one who 'hold[s] title to it for somebody else'" (quoting *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999))); *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 111 (2d Cir. 2006) ("The question of who owns a given item of personal property is a mixed question of law and fact." (discussing various facts relating to ownership considered by the district court)); *In re 650 Fifth Ave.*, 830 F.3d 66, 91-92 (2d Cir. 2016) (finding that bank concealed its ownership and control of properties using straw entities that held legal title); *Peterson v. Islamic Republic of Iran*, o. 10 Civ. 4518 (KBF), 2013 WL 1155576, at *34 (S.D.N.Y. Mar. 13, 2013) (noting that an entity's purported control over blocked assets was "irrelevant" where it did not assert that it was the "true beneficial owner" or the assets and in fact was "acting 'directly or indirectly' on behalf of a sanctioned government); *United States v. One Red 2003 Hummer H2*, 234 F. Supp. 3d 415, 419 (W.D.N.Y. 2017) ("ownership turns primarily upon the identity of the individual exercising dominion and control" and thus "the court must look beyond bare legal title to determine whether the record owner is the true owner, or merely a 'strawman'"); *United States v. One 1982 Porsche 928*, 732 F. Supp. 447, 451 (S.D.N.Y. 1990) ("ownership may be proven by actual possession, dominion, control, title, and financial stake" but "the possession of bare legal title . . . maybe insufficient absent other evidence of control or dominion") (gathering cases).

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By:    /s/
     Emily Deininger / David R. Felton
     Assistant United States Attorneys
     (212) 637-2472 / -2299

cc:    Counsel of Record (by ECF)